SAMUEL KATZ, APPELLANT, V. MARTHA M. ISH, APPELLEE.

FILED MAY 7, 1909. No. 15,646.

1. **Appeal in Equity.** While it is the duty of this court upon appeal in an equity case to pass upon the evidence and reach its own conclusion thereon, still, in ordinary cases, where the evidence is entirely oral and the trial court may be presumed to have had a general local knowledge of the parties, the witnesses and the subjects of controversy, the finding of the trial court is entitled to careful consideration.

2. **Evidence** examined, and *held* to sustain the judgment of the trial court.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Crane & Boucher,* for appellant.

*Byron G. Burbank, contra.*

LETTON, J.

This case was begun as an action for breach of a covenant against incumbrances contained in a warranty deed of certain warehouse property in Omaha, conveyed to Samuel Katz by Martha M. Ish under a contract whereby she sold the property to him for the sum of $30,000, and took in exchange certain farm lands in Nance county valued at $15,000, $7,500 in cash, and the assumption by Mr. Katz of a mortgage of $7,500 on the warehouse property. The deed recited that the warehouse property was conveyed "subject to a certain lease which expires October 1, 1905." At the time of this conveyance the property had been leased to a tenant until the 1st day of October, 1906, with the privilege of renewing the lease for an additional term of two years. The tenant exercised this privilege, and held possession under the lease until October 1, 1908. This leasehold interest is the incumbrance of which plaintiff complains. The plaintiff pleads that the difference between the rent fixed by the outstanding lease and the actual value of the use and occupation of the premises is the sum of $200 a month, making a total damage to him for the period from October 1, 1905, to October 1, 1908, when the lease expires, of $7,200, for which he prays judgment.

In answer the defendant pleads that the property was exchanged subject to existing leases under the terms of a written contract; that by mistake at the time the contract was written it failed to provide that each of the parties took the land of the other subject to the leases then existing thereupon; that as soon as this omission was discovered it was called to plaintiff's attention, and that he thereupon wrote upon the contract: "I hereby agree to receive the property subject to lease, and deliver the farm subject to lease. Samuel Katz." It is further alleged

that, when the deed was delivered, a written assignment of the lease was also delivered, which stated the exact terms of the lease, and that plaintiff had been in possession of the written lease and knew its terms and conditions before the contract was executed. The answer prayed that the deed should be reformed so as to show that the property was conveyed subject to the terms of the lease as it then actually existed.

The reply pleaded that prior to the execution of the written contract it was mutually understood by the parties that the lease expired October 1, 1905; that the clause subsequently written in was written in great haste at the railway station, and by mistake omitted to state the time when the lease expired. It prayed that the contract might be reformed so as to read: "I hereby agree to receive the property subject to the lease which expires October 1, 1905, and to deliver the farm subject to the lease. Samuel Katz," instead of as it was actually written. The district court found for the defendant, and reformed the deed as prayed in the answer.

The question presented by this appeal is really one of fact, and its determination depends entirely upon the view taken of the evidence. It will be necessary, therefore, to review the same to some extent. Mrs. Ish is a woman of 72 years of age, having had considerable business experience, and Mr. Katz is a competent business man. She testifies that the first time she met Mr. Katz was by arrangement at the office of Mr. Buck a real estate agent, on the Thursday before the Sunday on which the contract was signed. She and her son, James Ish, both testify that they had with them on that occasion the lease of the warehouse and the abstract of title to the same; that the son read the lease at length to Mr. Katz, who said "it sounded all right, but he would like to take it home and read it over and study it," and that the lease and abstract were given to him for examination and taken away by him; that on the following Sunday afternoon at Mr. Buck's request she went to Mr. Katz's office; that he told her he had

received a telegram, and would have to leave for Europe that evening, and that the contract was all prepared; that the contract was read and signed at that time; that after she returned home she read the contract again, and saw that the statement regarding the lease was omitted, and that she and Mr. Buck immediately went to the railroad station and found Mr. Katz there; that she told him that she could not deliver the building, and that the lease was not named in the contract, and that Katz took his pen and wrote on the contract the agreement that each shall take subject to existing leases, at that time. She further testifies that the next time she saw the lease after Mr. Katz took it at Buck's office was in Mr. Burbank's office on the 17th of March, when the parties met to complete the transaction; that at that time Mr. Katz's son, J. B. Katz, produced the lease for the purpose of having her make a written assignment of it; that at this meeting there were present Mr. Burbank, the attorney for Mrs. Ish, James Ish, Mrs. Ish, Mrs. Katz, J. B. Katz, Mr. Buck and Mr. Zeigler, the attorney for Mr. Katz. She denies making any statement that the lease expired on October 1, 1905, and denies knowledge of such a provision in the deed. Mr. Katz denies unequivocally that the lease was read to him, or was ever in his hands, or that he knew of its real terms until he returned from Europe. As to what occurred at the meeting in Burbank's office there is a direct conflict in the testimony. Mr. Zeigler and Mr. J. B. Katz both testify that the only papers they brought to the meeting were the deed and abstract to the Nance county farm; that Mr. Burbank produced the deed to the warehouse property and the assignments of the several leases, which had apparently been prepared before the meeting. Mr. Burbank, Mrs. Ish and James Ish all testify that Zeigler brought the deed, the lease and the abstract to the warehouse property with him; that the assignments of the leases were dictated by Burbank, and written at the time of the meeting, and not prepared beforehand, and that Mrs. Ish signed the deed upon Mr.

Burbank's assurance that it was correct, and that Burbank did this upon the strength of Zeigler's statement that the deed was satisfactory to him. A peculiar circumstance is that each witness denies preparing the deed to the warehouse property, or bringing it to the place of the meeting, and each denies acquaintance with the handwriting. If all this testimony is true, the deed must have materialized from the absolute ether, then and there, which is a phenomenon it strains our credulity to believe took place.

The plaintiff contends that the decree of the court reforming the deed is not sustained by sufficient evidence, and that the evidence on behalf of Mrs. Ish must be clear, convincing and satisfactory to warrant the court in reforming the deed as she prays. The trouble with this argument is that it is equally applicable to the prayer of the plaintiff to reform the contract whereby he agreed to receive the property subject to the lease and deliver the farm subject to the lease. In this regard we think the parties stand upon an equality. We think no more clear and convincing evidence is required to reform the deed than would be required to reform the contract. This being the case, the question before us is whether the evidence justifies the conclusion at which the district court arrived. Our attention is called to a number of circumstances which the plaintiff asserts corroborate the testimony of his witnesses. On the other hand, the defendant calls our attention to the fact that the testimony of Mrs. Katz, who was present at the final transaction in Mr. Burbank's office, was not taken by the plaintiff, and to the further undisputed fact that the lease itself, which bore upon its face provisions inconsistent with the deed, and the written assignment which described the term as three years from October 1, 1903, were exhibited, delivered to and accepted by the plaintiff's attorney at that time without objection, and apparently without any attempt at concealment on the part of defendant or her attorney. It is conceded that full opportunity was then

given for examination, and that examination was made in behalf of the plaintiff. This case is peculiar in this: That while the initial negotiations took place between two principals, whom the testimony indicates were experienced in business affairs and apparently cautious in their dealings, and the transaction was concluded and the papers exchanged in the presence of and under the supervision of able and experienced counsel, yet there is such a controversy in matters of fact. It is impossible to reconcile the statements of the witnesses. The trial judge had the advantage of seeing them face to face and hearing them testify, and had a much better opportunity to form a proper judgment as to the truth or falsity of the respective statements than this court has. Whichever story we believe, it seems strange that a transaction involving property valued at $30,000 should have been conducted so carelessly, both by the principals and their agents.

A critical analysis of the testimony of each witness is impracticable with the time at our command, and we can only say that, while not entirely satisfied, we think the preponderance of the evidence is with the defendant, and that the district court was justified in so finding. Upon the evidence as it appears before us in the record, we agree with this conclusion and affirm the judgment.

AFFIRMED.