FIRST NATIONAL BANK OF LOUP CITY, APPELLANT, V.
GEORGE F. PFLAESTER ET AL., APPELLEES.

FILED MAY 4, 1914.   No. 17,612.

1. **Appeal in Equity.** It is the duty of this court upon appeal in an
equity case to examine the evidence and to reach its own conclusion
thereon; yet, where the evidence is entirely oral and the trial court
may be fairly presumed to have a general local knowledge of the
parties, the witnesses and the subjects of the controversy, the find-
ing of the trial court is entitled to consideration.

2. **Evidence** examined, and *held* to sustain the findings and judgment of
the trial court.

APPEAL from the district court for Sherman county:
BRUNO O. HOSTETLER, JUDGE.   *Affirmed.*

*R. J. Nightingale* and *H. S. Nightingale,* for appellant.

*Aaron Wall* and *Kimball & Peterson; contra.*

HAMER, J.

This action was brought by the First National Bank of
Loup City against the defendants, George F. Pflaester,
Andrew W. Pflaester, and Pflaester Brothers, and Lewis S.
Howe, defendant and appellee, to foreclose certain alleged
chattel mortgage liens claimed to be in its favor.   The case
as between the plaintiff and Mr. Howe is to determine
whether the plaintiff has a lien upon certain personal
property claimed by Mr. Howe.   After this there is a sec-
ond contention as to whether the defendant Howe is in-
debted to the plaintiff.   There was a finding and judgment
for the defendant Howe on the claims against him.   It is
uncertain how many mortgages were executed and deliv-
ered to the appellant by the defendants George F. Pflaes-
ter, Andrew W. Pflaester, and Pflaester Brothers.   The
pleadings in the case are somewhat long and involved and
given to much detail.   We will therefore omit a statement
of their contents.

There is no question about the liability of the Pflaester Brothers. They make no contention. The decree of the district court, was against Andrew W. Pflaester and the Pflaester Brothers, nothing being claimed of George F. Pflaester. Of course, the vital question is whether there is a liability upon the part of the defendant Lewis S. Howe. Lewis S. Howe was the owner of a certain farm and pasture land. On the 3d day of August, 1908, he made a bargain with George F. Pflaester by which said Pflaester went on the farm to remain thereon in the management and working thereof according to such instructions as should be given to him from time to time by said Lewis S. Howe. There was on the farm certain live stock and personal property of which the said Pflaester took charge. The farm contained about 800 acres. Under the contract the said Pflaester was to farm the land in good husbandmanlike manner, and he was to furnish at his own expense all the hired help, and was to harvest the crops and feed the stock. He was to keep an accurate account of all transactions with respect to the property involving expense incurred at any time for feed, and was also to keep account of receipts, and the account was to be subject to the inspection of said Howe. The contract provided that he had no authority to collect any money or market any stock unless both parties were present at the sale. He was not to incur any debts without obtaining the consent of the said Howe. He was to have half of the increase of the cows and heifers, and also he was to have a half interest in all the crops raised. Hogs were to be raised on the farm and the party of the first part was to have half of the hogs. The contract contained the provision that it was to be good for two years, but that it could be extended for a longer time. It was signed by George F. Pflaester and Lewis S. Howe. Pflaester started in under this contract. Subsequently his brother joined him. The original live stock that was there was owned by Howe. Pflaester borrowed money of the bank. Becoming largely indebted to the bank, he went away. After he went away his brother executed a mortgage upon a lot of property including, as it is claimed by

the defendant Howe, the property which belonged to him. The trial judge who presided in the district court, and who had an opportunity to see the witnesses and to hear their testimony, was better prepared than we are to say which of the witnesses were credible and which were not. The petition and the assignments of error are quite voluminous and much given to detail. The actual issues, as shown by the evidence, are not extensive. The contract is not an unusual farm contract. It did not undertake to make the owner of the farm and the tenant partners. The understanding of the parties appears from the oral testimony, as well as from the written contract.

The defendant Andrew W. Pflaester did not sign the contract, and apparently had nothing to do with the arrangement at its commencement. Howe seems to have furnished 75 "she" cattle, 5 young steers, 1 bull. He testified that he furnished everything to run the place except 2 horses. George F. Pflaester was to have a half interest in the colts raised on the place, and also in the calves.

Howe testified that the property was always to remain his. This refers to the original stock. He also testified that he never sold Pflaester any interest in the cattle or in the machinery, but seems to have furnished all the machinery used on the place, a swinging hay stacker which he bought at Council Bluffs, a hay wagon and harness which he bought at a sale, a scraper, a lister, a disc, a new wagon, a corn binder, 2 riding cultivators, a 3-row cultivator, a 2-section harrow, a set of double harness, a 16-inch plow, a span of mules named Jack and Jennie, bought of James Foulon, a set of harness for the mules, a 7-year old mare called Bessie, bought in Council Bluffs, an 8-year old mare named Dolly, having a white stripe in her face, and which the defendant Howe raised, 27 head of cows 5 years old, some of which the defendant Howe raised, and some of which he bought at Thompson's sale, and some of which he shipped from South Omaha, one set of pump tools, and one grindstone. The defendant Howe testified that he owned all this property, and that he never transferred any interest in it to the Pflaesters or either of them; that he was

First Nat. Bank v. Pflaester.

the owner of all of this property at the time of the trial. He also testified that he owned an undivided half interest in the 2 colts, and that George Pflaester owned the other undivided half interest. The testimony of the defendant Howe is corroborated by the testimony of other witnesses who recognized the original stock. Something of a contest is made by counsel for the plaintiff on the theory that the agreement that Pflaester was to pay Howe on the value of the tools and horses used on the place 6. per cent. It is contended that this must have been property that had been sold to Pflaester. The whole contract should be construed together, and, so construing it, it is apparent that Howe agreed to furnish the tools and the horses for use on the place, and that the tenant was to pay him for the use of the same as long as they might be used 6 per cent. per annum on the value thereof. This would not seem to be an unreasonable charge considering the fact that within a few years the horses would die and the tools would wear out.

This court has so held in *Katz v. Ish,* 84 Neb. 380. In that case the first paragraph in the syllabus reads: "While it is the duty of this court upon appeal in an equity case to pass upon the evidence and reach its own conclusion thereon, still, in ordinary cases, where the evidence is entirely oral and the trial court may be presumed to have had a general local knowledge of the parties, the witnesses and the subjects of controversy, the finding of the trial court is entitled to careful consideration." The judgment of the trial court in that case was sustained. In the body of the opinion it is said: "A critical analysis of the testimony of each witness is impracticable with the time at our command, and we can only say that, while not entirely satisfied, we think the preponderance of the evidence is with the defendant, and that the district court was justified in so finding."

In *McNamara v. McNamara,* 93 Neb. 190, which was a divorce case, this court held: "In an action in equity this court, upon appeal, must try the case *de novo* upon

the evidence in the record. A decree of divorce will be affirmed if a cause of action alleged in the petition is supported by the evidence, although the trial court based the decree upon another alleged cause of action not established by the evidence."

After a careful examination of the testimony of the witnesses, briefs of counsel, and authorities cited, we are unable to say that the findings and judgment of the district court are wrong. It is shown by the record that the trial judge was careful in his examination of the details of the case. We adopt his conclusion. The judgment of the district court is

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.